**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| MONOLITHIC 3D™ INC., | § |
| | § Case No. |
| | § |
| Plaintiff, | § **JURY TRIAL DEMANDED** |
| | § |
| v. | § |
| | § |
| SK HYNIX INC., | § |
| | § |
| Defendant. | § |
| | § |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff MonolithIC 3D™ Inc. ("MonolithIC 3D" or "Plaintiff"), by and through its attorneys, files its Complaint against Defendant SK hynix Inc. (hereinafter, "SK hynix" or "Defendant"), and hereby alleges as follows:

## THE PARTIES

1.      MonolithIC 3D is a corporation organized and existing under the laws of the State of Texas, with its principal place of business located at 825 Watter's Creek Boulevard, Building M, Suite 250, Allen, Texas 75013.

2.      On information and belief, SK hynix is a corporation operating under the laws of the Republic of Korea ("Korea"), with its principal place of business located at 2091 Gyeongchung-daero, Bubal-eup, Icheon, Gyeonggi-do, Korea and may be served pursuant to the provisions of the Hague Convention. SK hynix does business in Texas, directly or through intermediaries, and maintains its principal place of business in Korea.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

4.      This Court has specific and personal jurisdiction over Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. Upon information and belief, Defendant has sufficient minimum contacts with the forum because Defendant transacts substantial business in the State of Texas and in this Judicial District. Further, Defendant has, directly or through subsidiaries or intermediaries, committed and continues to commit acts of patent infringement in the State of Texas and in this Judicial District as alleged in this Complaint.

5.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant comprises a foreign company that may be sued in any Judicial District, including the Eastern District of Texas.

6.      Defendant is subject to personal jurisdiction in this Judicial District and has committed acts of patent infringement in this Judicial District. Upon information and belief, Defendant through its own acts and/or through the acts of others, makes, uses, sells, and/or offers to sell infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with the Judicial District, such that this venue is a fair and reasonable one.

7.      SK hynix directly, through its subsidiaries and agents, and through its direct and indirect customers, purposefully and voluntarily places infringing semiconductor memory

modules in the stream of commerce while knowing, expecting, and intending them to be sold in and purchased and used by consumers in the United States, Texas, and this District.

8.     For example, SK hynix advertises and offers to sell the Accused Products globally, including throughout Texas and this District, on its websites at https://www.skhynix.com/ and https://product.skhynix.com/. SK hynix distributes "sales kits" and catalogs through its websites, identifying products available for overseas customers to purchase.[1] SK hynix further advertises its overseas locations, stating that "[w]e are securing our place as the leader of the global IT ecosystem of the world."



9.      SK hynix advertises its operations in Texas. SK hynix's website lists two "sales office[s]" in Texas: one located at 4201 West Parmer Lane Bldg. B, Suite 245, Austin, Texas 78727, and the second located at 20333 Tomball Parkway, Suite 320, Houston, Texas 77070.[3]

10.     Upon information and belief, SK hynix personnel travel to and/or work out of its Texas offices, and direct and control activities of SK hynix's subsidiaries and employees, or agents thereof in marketing and selling the Accused Products to United States customers.

11.     SK hynix's business includes the manufacture and sale of semiconductor devices, including flash memory ("NAND"), dynamic random access memory ("DRAM"), and CMOS image sensors ("CIS"). As of 2023, NAND flash memory products accounted for 29% of SK hynix's sales, with DRAM products accounting for another 63% of sales.[4]

12.     SK hynix's customers further make, import, ship, distribute, offer for sale, sell, use, and advertise (including offering products and services through websites), SK hynix's infringing semiconductor memory modules (or products incorporating those infringing semiconductor memory modules) in the United States, Texas, and this District.

13.     SK hynix also provides support for users and customers of its infringing semiconductor products in the United States, Texas, and this District. For example, SK hynix provides installation, technical, and other support for its products through its website. The website provides an interface for customers, including those in this District, to communicate with SK hynix for additional support. SK hynix also offers online firmware updates and other downloads for its semiconductor memory modules in the United States, Texas, and this District.

---

[3] https://www.skhynix.com/company/UI-FR-CP06/.
[4] https://news.skhynix.com/corporate/fact-sheet/.

14.     SK hynix also sells infringing semiconductor memory modules to third-party business customers, which in turn incorporate the infringing semiconductor memory modules into consumer electronics, including smart phones, servers, computers, tablets, automobiles, graphics cards, and more. SK hynix actively encourages and supports its customers' efforts to use, sell, offer to sell, and import the infringing semiconductor memory modules after they have been incorporated into consumer electronics.

15.     For example, SK hynix actively promotes and attempts to sell its products in the United States, including through attendance at major events like HPE Discover 2024, Hewlett Packard Enterprise's ("HPE") technology conference, which was held in Las Vegas, Nevada from June 17–20, 2024.[5]

16.     On information and belief, and by way of example, one of SK hynix's customers in the United States is Dell Technologies, Inc., which is based in Texas. Dell, a major technology company, reported annual revenue of over $88 billion in fiscal year 2024. Dell has substantial operations and physical places of business throughout Texas.

17.     Dell uses a wide variety of SK hynix's non-volatile memory products, including its flash memory products, which are incorporated into Dell's own electronics.[6]

---

[5] Sk hynix Showcases Power of Its Groundbreaking AI Memory Solutions at HPE Discover 2024, available at https://news.skhynix.com/hpe-discover-24-sk-hynix-shows-leading-ai-memory-solutions.
[6] Comprehensive Guide to Find Hynix Drivers in the Windows Server Catalog, available at https://www.dell.com/support/kbdoc/en-us/000217333/finding-hynix-drive-in-windows-server-catalog.



18.     Upon information and belief, SK hynix sells infringing semiconductor memory modules to Dell, which Dell uses in building its own consumer products. SK hynix then provides ongoing support to Dell, so that Dell can sell its products and its customers can use these products within the United States, Texas, and this District.

19.     Upon information and belief, as a further example, SK hynix further sells the Accused products to Nvidia Corporation in the United States. For example, NVIDIA uses SK hynix's high-bandwidth DRAM chips in its artificial intelligence processors and Grace CPU Superchip.

20.     Upon information and belief, SK hynix's further sells the Accused Products to Advanced Micro Devices, Inc. ("AMD") in the United States. AMD has substantial operations and physical places of business in Texas, including five offices in Austin, Houston, and Dallas. AMD uses SK hynix's memory modules in a variety of its products, including its graphics cards.

21.    Upon information and belief, additional United States customers for SK hynix's infringing semiconductor memory modules include Lenovo, Tesla, Inc., Intel, Qualcomm, HPE, and others.

22.    Through its direct and indirect customers, SK hynix has purposefully and voluntarily placed, and contributed to placing, infringing products into the stream of commerce, all the while knowing, expecting, and intending them to be sold, purchased, and used in the United States, including Texas (the second most populous state in the United States) and this District.

23.    SK hynix also directly and/or through its agents and subsidiaries offers to sell, sells, imports, and/or advertises its infringing semiconductor memory modules throughout the United States, including Texas and this District.

24.    Upon information and belief, SK hynix has derived, and continues to derive, substantial revenue from its infringing acts in Texas and this District, including from the sale and use of infringing semiconductor memory modules.

25.    SK hynix therefore knows, expects, intends, and desires that its infringing semiconductor products, and electronics containing its infringing semiconductor products, will be sold in the United States, Texas, and this District.

26.    SK hynix has committed acts, and continues to commit acts, within Texas and this District giving rise to this action. SK hynix has established sufficient minimum contacts with the State of Texas, such that the Court's exercise of jurisdiction over this matter would not offend traditional notions of fair play and substantial justice.

## FACTUAL BACKGROUND

27.    On October 18, 2022, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,476,181 (the "'181 Patent") entitled "3D Semiconductor Device

and Structure with Metal Layers." A true and correct copy of the '181 Patent is available at: https://patentimages.storage.googleapis.com/e0/e1/a3/4c1e95991de883/US11476181.pdf.

28.     On March 21, 2023, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,610,802 (the "'802 Patent") entitled "Method For Producing A 3D Semiconductor Device and Structure with Single Crystal Transistors and Metal Gate Electrodes." A true and correct copy of the '802 Patent is available at: https://patentimages.storage.googleapis.com/72/00/c9/f2cec670e5d346/US11610802.pdf.

29.     On October 31, 2023, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,804,396 (the "'396 Patent") entitled "Methods for Producing A 3D Semiconductor Device and Structure with Memory Cells and Multiple Metal Layers." A true and correct copy of the '386 Patent is available at: https://patentimages.storage.googleapis.com/8a/c5/da/58ef6bfc72404a/US11804396.pdf.

30.     On January 2, 2024, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,862,503 (the "'503 Patent") entitled "Method for Producing a 3D Semiconductor Device and Structure with Memory Cells and Multiple Metal Layers." A true and correct copy of the '503 Patent is available at: https://patentimages.storage.googleapis.com/4a/20/0e/1dd6a188b16da8/US11862503.pdf.

31.     On August 20, 2019, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,388,568 (the "'568 Patent") entitled "3D Semiconductor Device and System." A true and correct copy of the '568 Patent is available at: https://patentimages.storage.googleapis.com/f0/11/8d/8a79a6b66d953f/US10388568.pdf.

32.     On December 20, 2022, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,532,599 (the "'599 Patent") entitled "3D Semiconductor Device

and Structure with Metal Layers." A true and correct copy of the '599 Patent is available at: https://patentimages.storage.googleapis.com/9b/81/ea/9b50e7d6e2fc19/US11532599.pdf.

33.     On February 7, 2023, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,575,038 (the "'038 Patent") entitled "3D Semiconductor Device and Structure With Memory." A true and correct copy of the '038 Patent is available at: https://patentimages.storage.googleapis.com/cd/ea/5d/4ff67944aaf985/US11575038.pdf.

34.     On October 17, 2023, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 11,791,222 (the "'222 Patent") entitled "3D Semiconductor Device and Structure." A true and correct copy of the '568 Patent is available at: https://patentimages.storage.googleapis.com/af/2f/16/2ba1359847972f/US11791222.pdf.

35.     MonolithIC 3D is the sole and exclusive owner of all right, title, and interest to and in the '181 Patent, the '802 Patent, the '396 Patent, the '503 Patent, the '568 Patent, the '599 Patent, the '038 Patent, and the '222 Patent (collectively the "Patents-in-Suit" or "Asserted Patents"), and holds the exclusive right to take all actions necessary to enforce its rights to the Patent-in-Suit, including the filing of this patent infringement lawsuit. MonolithIC 3D also has the right to recover all damages for past, present, and future infringement of the Patent-in-Suit, and to seek injunctive relief as appropriate under the law.

36.     MonolithIC 3D is an innovator in computer memory, logic, and electro-optics. MonolithIC 3D was originally founded and incorporated in 2009 under the name NuPGA by Zvi Or-Bach, the President and CEO of MonolithIC 3D. NuPGA's mission was to develop programmable logic technology with density, speed, and power approaching application-specific integrated circuits ("ASICs"). While developing improved field-programmable gate array ("FPGA") technology, the NuPGA team discovered a path for practical monolithic 3D integrated

circuits ("IC"). Recognizing that this breakthrough and its many related innovations represented a paradigm shift for the entire semiconductor industry, Mr. Or-Bach changed the company strategy to focus on monolithic 3D-ICs and renamed the company to MonolithIC 3D$^{TM}$ Inc.

37.    MonolithIC 3D has more than 300 U.S. patents related to multi-level IC technology, including  and over 90 U.S. patents related to 3D NAND flash memory technology and over 30 patents related to high bandwidth memory (HBM) technology.

38.    The Patents-in-Suit generally relate to semiconductor memory devices and fabrication methods. The technology of the Patent-in-Suit was variously developed Zvi Or-Bach, Deepak C. Sekar, Brian Cronquist, Israel Beinglass, and Zeev Wurman of Monolithic 3D. Some embodiments of the invention provide 3D stacked NAND integrated circuit and high bandwidth memory integrated circuits. SK hynix uses this technology, for example, in its implementation of NAND memory, and high bandwidth memory of the Accused Products.

39.    SK hynix has infringed and is continuing to infringe the Patent-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell and/or importing products comprising 3D memory, including at least all 3D NAND memory(the "Accused Products"). For example, the Accused Product include all SK hynix SSD products comprising 3D NAND, such as all PEB000 series, PS1000 series, PE9000 series, PE8000 Series, PE6000 Series, SE5000 Series, PCB01/PVC10 series, PC801/BC901 series, and PC/BC711 series products. For example, the Accused Product include all SK hynix NAND storage products such as all UE400, UD310/220, and UD310A/210A UFS products, and all eMMC 5.1 series eMMC products.

40.    SK hynix has had knowledge and notice of the Asserted Patents and its infringement thereof, at least as of the filing of this Complaint.

## COUNT I
### (Infringement of the '181 Patent)

41.     Paragraphs 1 through 40 are incorporated by reference as if fully set forth herein.

42.     MonolithIC 3D has not licensed or otherwise authorized SK hynix to make, use, offer for sale, sell, or import any products that embody the inventions of the '181 Patent.

43.     SK hynix has and continues to directly infringe the '181 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States, products that satisfy each and every limitation of one or more claims of the '181 Patent. These products include at least the Accused Products, such as the SK hynix Platinum P51 SSD.











3D NAND Die Photograph
(after removal from chip encapsulation)

44.     For example, Defendant has and continues to directly infringe at least claim 4 of the '181 Patent by making, using, offering to sell, selling, and/or importing into the United States products that comprise a 3D semiconductor device, the device comprising: a first level comprising a single crystal silicon layer and a plurality of first transistors, said plurality of first transistors each comprising a single crystal channel; a first metal layer overlaying said plurality of first transistors; a second metal layer overlaying said first metal layer; a third metal layer overlaying said second metal layer; a second level, wherein said second level overlays said first level, wherein said second level comprises a plurality of second transistors; a fourth metal layer overlaying said second level; and a connective path between said fourth metal layer and said third metal layer or said second metal layer, wherein said connective path comprises a via disposed through said second level, wherein said via has a diameter of less than 500 nm and greater than 5 nm, wherein at least one of said plurality of second transistors is vertically oriented, and wherein said third metal layer is connected to provide a power or a ground signal to at least one of said plurality of second transistors.

45.     Each Accused Product comprises a 3D semiconductor device, the device comprising: a first level comprising a single crystal silicon layer and a plurality of first transistors, said plurality of first transistors each comprising a single crystal channel. For example, the below diagram demonstrates these elements in the P51 SSD. The plurality of first transistors are formed in the single crystal silicon substrate, and each transistor is a single crystal channel device.



46.     Each Accused Product comprises a first metal layer overlaying said plurality of first transistors; a second metal layer overlaying said first metal layer; a third metal layer overlaying said second metal layer; and a second level. For example, the third metal layer is a bitline level. The below diagram demonstrates these elements in the P51 SSD.



47. Each Accused Product comprises a system wherein said second level overlays said first level, and wherein said second level comprises a plurality of second transistors. For example, the below diagram demonstrates these elements in the P51 SSD.



48.    Each Accused Product comprises a fourth metal layer overlaying said second level fourth metal layer overlaying said second level. For example, the below diagram demonstrates these elements in the P51 SSD.



49. Each Accused Product comprises a connective path between said fourth metal layer and said third metal layer or said second metal layer. For example, in the P51 SSD, the external connection to the 3D NAND occurs through the bond wires attached to the fourth metal. This fourth metal is connected to other metals by vias. For example, vertical via paths from the second metal layer to the fourth metal layer.



3D NAND Die Corner (Plan view of          3D NAND Device Cross-section
bond wires, Optical)                              (SEM)

50.    Each Accused Product comprises a system wherein said connective path comprises a via disposed through said second level. For example, the below diagram demonstrates these elements in the P51 SSD.



51.    Each Accused Product comprises a system wherein said via has a diameter of less than 500 nm and greater than 5 nm. For example, the below diagram demonstrates these elements in the P51 SSD.



52.     Each Accused Product comprises a system wherein at least one of said plurality of second transistors is vertically oriented. For example, the below diagram demonstrates these elements in the P51 SSD.



Via Cross-section (Cell detail of Deck 1, SEM)

53.    Each Accused Product comprises a system wherein said third metal layer is connected to provide a power or a ground signal to at least one of said plurality of second transistors. For example, voltage is applied to the 3D NAND through the bitline forming the third metal layer.



54.    SK hynix indirectly infringes one or more claims of the '181 Patent by knowingly and intentionally inducing others, including SK hynix customers and end-users of the Accused Products and products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as Platinum P51 SSDs.

55.    SK hynix indirectly infringes one or more claims of the '181 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as SK hynix's customers and end-users, in this District and elsewhere in the United States. For example, SK hynix's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '181 Patent. SK hynix induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including

technical support, marketing, product manuals, advertisements, and online documentation. Because of SK hynix's inducement, SK hynix's customers and end-users use the Accused Products in a way SK hynix intends and directly infringe the '181 Patent. SK hynix performs these affirmative acts with knowledge of the '181 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '181 Patent.

56.    SK hynix indirectly infringes one or more claims of the '181 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. SK hynix's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '181 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '181 Patent, are not staple articles or commodities of commerce, have no substantial non--infringing uses, and are known by SK hynix to be especially made or adapted for use in the infringement of the '181 Patent. SK hynix performs these affirmative acts with knowledge of the '181 Patent and with intent, or willful blindness, that it causes the direct infringement of the '181 Patent.

57.    SK hynix has willfully infringed, and continues to willfully infringe, the '181 Patent by intentionally and deliberately carrying out acts of direct and indirect infringement, while knowing, or taking deliberate steps to avoid learning, that those acts infringe. For example, Upon information and belief, SK hynix has known of MonolithIC 3D's patents, including the '181 Patent.

58.     MonolithIC 3D has suffered damages as a result of Defendant's direct and indirect infringement and willful infringement of the '181 Patent in an amount to be proved at trial.

59.     MonolithIC 3D has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '181 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## <u>COUNT II</u>
### (Infringement of the '802 Patent)

60.     Paragraphs 1 through 40 are incorporated by reference, as if fully set forth herein.

61.     MonolithIC 3D has not licensed or otherwise authorized SK hynix to make, use, offer for sale, sell, or import any products that embody the inventions of the '802 Patent.

62.     Defendant has and continues to directly infringe the '802 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271(g), by importing into the United States, offering to sell, selling, or using with the United States, products that satisfy each and every limitation of one or more claims of the '802 Patent. These products include at least the Accused Products, such as the SK hynix Platinum P51 SSD.











3D NAND Die Photograph
(after removal from chip encapsulation)

63.    For example, Defendant has and continues to infringe at least claim 8 of the '802 Patent under 35 U.S.C. § 271(g) by making, using, offering to sell, selling, and/or importing into the United States products made by a process A method for producing a 3D semiconductor device, the method comprising: providing a first level, said first level comprising a first single crystal layer; forming peripheral circuitry in and/or on said first level, wherein said peripheral circuitry comprises first single crystal transistors; forming a first metal layer on top of said first level; forming a second metal layer on top of said first metal layer; forming at least one second level disposed on top of or above said second metal layer; performing a first lithography step on said second level; forming at least one third level disposed on top of or above said at least one second level; performing a second lithography step on said third level; performing additional processing steps to form a plurality of first memory cells within said second level and a plurality of second memory cells within said third level, wherein said additional processing steps comprise deposition processes and etch processes, wherein each of said plurality of first memory cells comprises at least one second transistor, wherein each of said plurality of second memory cells comprises at least one third transistor; and then performing a deposition step to simultaneously deposit gate electrodes on both said at least one second transistor and said at least one third transistor.

64.    Each Accused Product is made by a process for producing a method for producing a 3D semiconductor device, the method comprising: providing a first level, said first level comprising a first single crystal layer. For example, the below cross section demonstrates these elements in the P51. The CMOS peripheral circuits of the P51 are single crystal silicon transistors.



65.     Each Accused Product is made by a process of forming peripheral circuitry in and/or on said first level, wherein said peripheral circuitry comprises first single crystal transistors. For example, the below diagram demonstrates these elements in the P51 SSD.



66.    Each Accused Product is made by a process of forming a first metal layer on top of said first level; forming a second metal layer on top of said first metal layer; forming at least one second level disposed on top of or above said second metal layer. For example, the diagram below demonstrates these elements in the P51 SSD.



67.    Each Accused Product is made by a process of performing a first lithography step on said second level. For example, the memory tubes of 3D NAND deck 1 are formed by a lithography step prior to being etched.



68.    Each Accused Product is made by a process of forming at least one third level disposed on top of or above said at least one second level; and performing a second lithography step on said third level. For example the memory tubes of NAND deck 2 are formed by a lithography step prior to being etched.



69.    Each Accused Product is made by a process of performing additional processing steps to form a plurality of first memory cells within said second level and a plurality of second memory cells within said third level, wherein said additional processing steps comprise deposition processes and etch processes. For example the layers of each NAND deck of the P51 SSD are formed by lithography patterning and etching of each memory tube, gate dielectric depositions, polysilicon channel deposition, and oxide tube fill.





70. Each Accused Product is made by a process wherein each of said plurality of first memory cells comprises at least one second transistor. For example, the diagram below demonstrates these elements in the P51 SSD.



71.     Each Accused Product is made by a process wherein each of said plurality of second memory cells comprises at least one third transistor. For example, the diagram below demonstrates these elements in the P51 SSD.



72.    Each Accused Product is made by a process of performing a deposition step to simultaneously deposit gate electrodes on both said at least one second transistor and said at least one third transistor. For example, the slit is formed through both decks, SiN is removed with an etchant, and W gate electrodes are formed simultaneously for both decks.



73.    The Accused Products are not materially changed by subsequent processes. For example, the P51 SSD is a memory integrated circuit which operates as a unit and is not modified at the chip level following its manufacture.

74.    The Accused Products do not become trivial or nonessential components of another product. For example, the P51 SSD provides flash storage necessary for the operation of computers and other products which incorporate it.

75.    SK hynix has willfully infringed, and continues to willfully infringe, the '802 Patent by intentionally and deliberately carrying out acts of direct and indirect infringement, while knowing, or taking deliberate steps to avoid learning, that those acts infringe. For example, Upon information and belief, SK hynix has known of MonolithIC 3D's patents, including the '802 Patent.

76.     MonolithIC 3D has suffered damages as a result of Defendant's direct and indirect infringement and willful infringement of the '802 Patent in an amount to be proved at trial.

77.     MonolithIC 3D has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '802 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

**COUNT III**
**(Infringement of the '396 Patent)**

78.     Paragraphs 1 through 40 are incorporated by reference as if fully set forth herein.

79.     MonolithIC 3D has not licensed or otherwise authorized SK hynix to make, use, offer for sale, sell, or import any products that embody the inventions of the '396 Patent.

80.     Defendant has and continues to directly infringe the '396 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271(g), by importing into the United States, offering to sell, selling, or using with the United States, products that satisfy each and every limitation of one or more claims of the '396 Patent. These products include at least the Accused Products, such as the SK hynix Platinum P51 SSD.











3D NAND Die Photograph
(after removal from chip encapsulation)

81.    For example, Defendant has and continues to infringe at least claim 1 of the '396 Patent under 35 U.S.C. § 271(g) by making, using, offering to sell, selling, and/or importing into the United States, products made by a method for producing a method for producing a 3D semiconductor device, the method comprising: providing a first level, said first level comprising a first single crystal layer; forming a first metal layer on top of said first level; forming a second metal layer on top of said first metal layer; forming at least one second level disposed on top of or above said second metal layer; performing a first lithography step on said second level; forming at least one third level disposed on top of or above said at least one second level; performing additional processing steps to form a plurality of first memory cells within said at least one second level; performing said additional processing steps to form a plurality of second memory cells within said at least one third level, wherein said additional processing steps comprise deposition processes and etch processes, wherein each of said plurality of first memory cells comprises at least one second transistor, wherein each of said plurality of second memory cells comprises at least one third transistor; and then performing at least one deposition step which deposits gate electrodes for both said at least one second transistor and said at least one third transistor; and forming at least four independent memory arrays, wherein said at least four independent memory arrays comprise portions of said plurality of first memory cells and/or portions of said plurality of second memory cells.

82.    Each Accused Product is made by a process for producing a 3D semiconductor device, the method comprising: providing a first level, said first level comprising a first single crystal layer; forming a first metal layer on top of said first level. For example, the below cross section demonstrates these elements in the P51. The CMOS peripheral circuits of the P51 are single crystal silicon transistors.



83. Each Accused Product is made by a process of forming a second metal layer on top of said first metal layer; and forming at least one second level disposed on top of or above said second metal layer. For example, the below cross section demonstrates these elements in the P51.



84. Each Accused Product is made by a process of performing a first lithography step on said second level. For example, the memory tubes of 3D NAND deck 1 are formed by a lithography step prior to being etched.



85.     Each Accused Product is made by a process of forming at least one third level disposed on top of or above said at least one second level. For example, the below cross section demonstrates these elements in the P51.



86.     Each Accused Product is made by a process of performing additional processing steps to form a plurality of first memory cells within said at least one second level. For example the layers of each NAND deck of the P51 SSD are formed by lithography patterning and etching of each memory tube, gate dielectric depositions, polysilicon channel deposition, and oxide tube fill.





87.     Each Accused Product is made by a process of performing said additional processing steps to form a plurality of second memory cells within said at least one third level, and wherein said additional processing steps comprise deposition processes and etch processes. For example, the etching to form the vertical memory tube in Nand deck 2 of the P51 SSD is an identical process used for Nand deck 1 described above.

88.     Each Accused Product is made by a process wherein each of said plurality of first memory cells comprises at least one second transistor. For example, the below cross section demonstrates these elements in the P51.



89.    Each Accused Product is made by a process wherein each of said plurality of second memory cells comprises at least one third transistor. For example, the below cross section demonstrates these elements in the P51.



90.    Each Accused Product is made by a process of performing at least one deposition step which deposits gate electrodes for both said at least one second transistor and said at least one third transistor. For example, the slit is formed through both decks, SiN is removed with an etchant, and W gate electrodes are formed simultaneously for both decks.



91.     Each Accused Product is made by a process of forming at least four independent memory arrays, wherein said at least four independent memory arrays comprise portions of said plurality of first memory cells and/or portions of said plurality of second memory cells. For example, the P51 SSD comprises at least four independent arrays on the die, each containing the full stack of NAND flash memory cells.



92.     The Accused Products are not materially changed by subsequent processes. For example, the P51 SSD is a memory integrated circuit which operates as a unit and is not modified at the chip level following its manufacture.

93.     The Accused Products do not become trivial or nonessential components of another product. For example, the P51 SSD provides flash storage necessary for the operation of computers and other products which incorporate it.

94.     SK hynix has willfully infringed, and continues to willfully infringe, the '396 Patent by intentionally and deliberately carrying out acts of direct and indirect infringement, while knowing, or taking deliberate steps to avoid learning, that those acts infringe. For example, Upon information and belief, SK hynix has known of MonolithIC 3D's patents, including the '396 Patent.

95.     MonolithIC 3D has suffered damages as a result of Defendant's direct and indirect infringement and willful infringement of the '396 Patent in an amount to be proved at trial.

96.     MonolithIC 3D has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '396 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT IV
### (Infringement of the '503 Patent)

97.     Paragraphs 1 through 40 are incorporated by reference, a`s if fully set forth herein.

98.     MonolithIC 3D has not licensed or otherwise authorized SK hynix to make, use, offer for sale, sell, or import any products that embody the inventions of the '503 Patent.

99.     Defendant has and continues to directly infringe the '503 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271(g), by importing into the United States, offering to sell, selling, or using with the United States, products

that satisfy each and every limitation of one or more claims of the '503 Patent. These products include at least the Accused Products, such as the SK hynix Platinum P51 SSD.











3D NAND Die Photograph
(after removal from chip encapsulation)

100.    For example, Defendant has and continues to infringe at least claim 1 of the '503 Patent under 35 U.S.C. § 271(g) by making, using, offering to sell, selling, and/or importing into the United States products made by a method for producing method for producing a 3D semiconductor device, the method comprising: providing a first level, said first level comprising a first single crystal layer; forming a first metal layer on top of said first level; forming a second metal layer on top of said first metal layer; forming at least one second level disposed on top of or above said second metal layer; performing a first lithography step on said second level; forming at least one third level disposed on top of or above said at least one second level; and then performing a second lithography step on said third level; performing additional processing steps to form a plurality of first memory cells within said at least one second level and a plurality of second memory cells within said at least one third level, wherein said additional processing steps comprise deposition processes and etch processes, wherein each of said plurality of first memory cells comprises at least one second transistor, wherein each of said plurality of second memory

cells comprises at least one third transistor; and then performing at least one deposition step that simultaneously deposits gate electrodes for both said second transistors and said third transistors.

101.    Each Accused Product is made by a process for producing A method for producing a 3D semiconductor device, the method comprising: providing a first level, said first level comprising a first single crystal layer; forming a first metal layer on top of said first level; forming a second metal layer on top of said first metal layer; and forming at least one second level disposed on top of or above said second metal layer. For example, the CMOS peripheral circuits of the P51 are single crystal silicon transistors.



102.    Each Accused Product is made by a process of performing a first lithography step on said second level. For example, the memory tubes of 3D NAND deck 1 are formed by a lithography step prior to being etched.



103.    Each Accused Product is made by a process of forming at least one third level disposed on top of or above said at least one second level; and then performing a second lithography step on said third level. For example, the below cross section demonstrates these elements in the P51.



104.    Each Accused Product is made by a process of performing additional processing steps to form a plurality of first memory cells within said at least one second level and a plurality of second memory cells within said at least one third level, wherein said additional processing steps comprise deposition processes and etch processes. For example, after the lithography patterning step, memory tube holes are etched, followed by deposition of dielectrics and the polysilicon channel. The layers in each deck are formed by lithography patterning and etch of memory holes, gate dielectrics depositions, polysilicon channel deposition, and oxide tube fill.





Memory Tube Opening

Gate dielectrics
(tunnel-trap-blocking)

Polysilicon
channel



105.    Each Accused Product is made by a process wherein each of said plurality of first memory cells comprises at least one second transistor. For example, the below cross section demonstrates these elements in the P51.



106.    Each Accused Product is made by a process of wherein each of said plurality of second memory cells comprises at least one third transistor. For example, the below cross section demonstrates these elements in the P51.



107.    Each Accused Product is made by a process of performing at least one deposition step that simultaneously deposits gate electrodes for both said second transistors and said third transistors. For example, the slit is formed through both decks, SiN is removed with an etchant, and W gate electrodes are formed simultaneously for both decks.



108. The Accused Products are not materially changed by subsequent processes. For example, the P51 SSD is a memory integrated circuit which operates as a unit and is not modified at the chip level following its manufacture.

109. The Accused Products do not become trivial or nonessential components of another product. For example, the P51 SSD provides flash storage necessary for the operation of computers and other products which incorporate it.

110. SK hynix has willfully infringed, and continues to willfully infringe, the '503 Patent by intentionally and deliberately carrying out acts of direct and indirect infringement, while knowing, or taking deliberate steps to avoid learning, that those acts infringe. For example, Upon information and belief, SK hynix has known of MonolithIC 3D's patents, including the '503 Patent.

111.    MonolithIC 3D has suffered damages as a result of Defendant's direct and indirect infringement and willful infringement of the '503 Patent in an amount to be proved at trial.

112.    MonolithIC 3D has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '503 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT V
### (Infringement of the '568 Patent)

113.    Paragraphs 1 through 40 are incorporated by reference as if fully set forth herein.

114.    MonolithIC 3D has not licensed or otherwise authorized SK hynix to make, use, offer for sale, sell, or import any products that embody the inventions of the '568 Patent.

115.    SK hynix has and continues to directly infringe the '568 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '568 Patent. These products include at least the Accused Products, such as the SK Hynix Platinum P51 SSD.











3D NAND Die Photograph
(after removal from chip encapsulation)

116.    For example, Defendant has and continues to directly infringe at least claim 7 of the '568 Patent by making, using, offering to sell, selling, and/or importing into the United States products that comprise a 3D semiconductor device, the device comprising: a first single crystal layer comprising a plurality of first transistors; at least one first metal layer interconnecting said plurality of first transistors, wherein said interconnecting comprises forming memory peripheral circuits; a plurality of second transistors atop at least a portion of said at least one first metal layer; a second metal layer atop at least a portion of said plurality of second transistors; a third metal layer disposed above said first metal layer and under said second metal layer; a first memory cell atop said memory peripheral circuits; a second memory cell atop said first memory cell; and a non-volatile NAND memory, wherein said first memory cell comprises at least one of said second transistors, wherein said memory peripheral circuits control at least said first memory cell, wherein at least one of said second transistors comprises a source, channel and drain, wherein said source, said channel and said drain have a same dopant type, wherein said non-volatile NAND memory comprises said first memory cell, wherein said third metal layer is significantly thicker than said first metal layer or said second metal layer.

117.    Each Accused Product comprises a 3D semiconductor device, the device comprising: a first single crystal layer comprising a plurality of first transistors; at least one first metal layer interconnecting said plurality of first transistors, wherein said interconnecting comprises forming memory peripheral circuits; and a plurality of second transistors atop at least a portion of said at least one first metal layer. For example, the CMOS peripheral circuits of the accused P51 SSD are built on a single crystal silicon substrate. For example, the below cross section demonstrates these elements in the P51.



118.    Each Accused Product comprises a second metal layer atop at least a portion of said plurality of second transistors; and a third metal layer disposed above said first metal layer and under said second metal layer. For example, the below cross sections demonstrate these elements in the P51 SSD.



**a second metal layer**

**said plurality of second transistors**



**said second metal layer**

**said plurality of second transistors**

**a third metal layer**

**said first metal layer**

119.    Each Accused Product comprises a first memory cell atop said memory peripheral circuits; a second memory cell atop said first memory cell; and a non-volatile NAND memory, wherein said first memory cell comprises at least one of said second transistors, wherein said memory peripheral circuits control at least said first memory cell. For example, the second transistors form non-volatile NAND flash memory strings, and the CMOS under array circuits control the flow of data in and out of the NAND memory cells. For example, the below cross sections demonstrate these elements in the P51 SSD.



120.    Each Accused Product comprises wherein at least one of said second transistors comprises a source, channel and drain, wherein said source, said channel and said drain have a same dopant type. For example, each NAND memory transistor of the vertical NAND string comprises a structural source, channel and drain. The polysilicon NAND tube is produced continuously with controlled doping to maintain a single dopant throughout the structure.



121.    Each Accused Product comprises a system wherein said non-volatile NAND memory comprises said first memory cell. For example, the below cross sections demonstrate these elements in the P51 SSD.



said first memory cell

said non-volatile NAND memory

122.    Each Accused Product comprises a system wherein said third metal layer is significantly thicker than said first metal layer or said second metal layer. For example, the below cross sections demonstrate these elements in the P51 SSD.



said second metal layer

said plurality of second transistors

a third metal layer

said first metal layer

said third metal layer is significantly thicker than said first metal layer or said second metal layer

123.     SK hynix indirectly infringes one or more claims of the '568 Patent by knowingly and intentionally inducing others, including SK hynix customers and end-users of the Accused Products and products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as Platinum P51 SSDs.

124.     SK hynix indirectly infringes one or more claims of the '568 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as SK hynix's customers and end-users, in this District and elsewhere in the United States. For example, SK hynix's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '568 Patent. SK hynix induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of SK hynix's inducement, SK hynix's customers and end-users use the Accused Products in a way SK hynix intends and directly infringe the '568 Patent. SK hynix performs these affirmative acts with knowledge of the '568 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '568 Patent.

125.     SK hynix indirectly infringes one or more claims of the '568 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. SK hynix's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others'

use and manufacture of the Accused Products, such that the '568 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '568 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by SK hynix to be especially made or adapted for use in the infringement of the '568 Patent. SK hynix performs these affirmative acts with knowledge of the '568 Patent and with intent, or willful blindness, that it causes the direct infringement of the '568 Patent.

126.    MonolithIC 3D has suffered damages as a result of Defendant's direct and indirect infringement of the '568 Patent in an amount to be proved at trial.

127.    SK hynix has willfully infringed, and continues to willfully infringe, the '568 Patent by intentionally and deliberately carrying out acts of direct and indirect infringement, while knowing, or taking deliberate steps to avoid learning, that those acts infringe. For example, Upon information and belief, SK hynix has known of MonolithIC 3D's patents, including the '568 Patent.

128.    MonolithIC 3D has suffered damages as a result of Defendant's direct and indirect infringement and willful infringement of the '568 Patent in an amount to be proved at trial.

129.    MonolithIC 3D has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '568 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT VI
### (Infringement of the '599 Patent)

130.    Paragraphs 1 through 40 are incorporated by reference as if fully set forth herein.

131.    MonolithIC 3D has not licensed or otherwise authorized SK hynix to make, use, offer for sale, sell, or import any products that embody the inventions of the '599 Patent.

132.    SK hynix has and continues to directly infringe the '599 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '599 Patent. These products include at least the Accused Products, such as the SK hynix Platinum P51 SSD.











3D NAND Die Photograph
(after removal from chip encapsulation)

133.    For example, Defendant has and continues to directly infringe at least claim 1 of the '599 Patent by making, using, offering to sell, selling, and/or importing into the United States products that comprise a semiconductor device, the device comprising: a first silicon layer comprising a first single crystal silicon and a plurality of first transistors; a first metal layer disposed over said first silicon layer; a second metal layer disposed over said first metal layer; a third metal layer disposed over said second metal layer; a second level comprising a plurality of second transistors, said second level disposed over said third metal layer; a fourth metal layer disposed over said second level; a fifth metal layer disposed over said fourth metal layer; and a connection path from said fifth metal layer to said second metal layer, wherein said connection path comprises a via disposed through said second level, wherein said via has a diameter of less than 450 nm, wherein said fifth metal layer comprises a global power distribution grid, and wherein a typical thickness of said fifth metal layer is greater than a typical thickness of said second metal layer by at least 50%.

134.    Each Accused Product comprises A semiconductor device, the device comprising: a first silicon layer comprising a first single crystal silicon and a plurality of first transistors. For example, the plurality of first transistors are formed in the single crystal substrate, and each transistor is a single crystal channel device. For example, the below cross section demonstrates these elements in the P51 SSD.



135.     Each Accused Product comprises a first metal layer disposed over said first silicon layer; a second metal layer disposed over said first metal layer; and a third metal layer disposed over said second metal layer. For example, the below cross section demonstrates these elements in the P51 SSD.



136.    Each Accused Product comprises a second level comprising a plurality of second transistors, said second level disposed over said third metal layer. For example, the below cross section demonstrates these elements in the P51 SSD.



137.    Each Accused Product comprises a fourth metal layer disposed over said second level; and a fifth metal layer disposed over said fourth metal layer. For example, the below cross section demonstrates these elements in the P51 SSD.



138.    Each Accused Product comprises a connection path from said fifth metal layer to said second metal layer. For example, an external connection to the 3D NAND of the P51 SSD comprises bond wires attached to the aforementioned fifth metal. The fifth metal is connected to other metals by vias in cross-section planes of the Accused Products. The CMOS under array includes the second metal layer, to which external data and power are supplied via a vertical path from the fifth metal layer to the second metal layer.



139.    Each Accused Product comprises a system wherein said connection path comprises a via disposed through said second level, and wherein said via has a diameter of less than 450 nm. For example, the below cross section demonstrates these elements in the P51 SSD.





140.    Each Accused Product comprises a system wherein said fifth metal layer comprises a global power distribution grid. For example, the top metal on the NAND die of the P51 SSD is used for global power distribution, among other functions.



141.    Each Accused Product comprises a system wherein a typical thickness of said fifth metal layer is greater than a typical thickness of said second metal layer by at least 50%. For example, the below cross section demonstrates these elements in the P51 SSD.



142.    SK hynix indirectly infringes one or more claims of the '599 Patent by knowingly and intentionally inducing others, including SK hynix customers and end-users of the Accused Products and products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as Platinum P51 SSDs.

143.    SK hynix indirectly infringes one or more claims of the '599 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as SK hynix's customers and end-users, in this District, and elsewhere in the United States. For example, SK hynix's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '599 Patent. SK hynix induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the

Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of SK hynix's inducement, SK hynix's customers and end-users use the Accused Products in a way SK hynix intends and directly infringe the '599 Patent. SK hynix performs these affirmative acts with knowledge of the '599 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '599 Patent.

144.    SK hynix indirectly infringes one or more claims of the '599 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District, and elsewhere in the United States. SK hynix's affirmative acts of selling and offering to sell the Accused Products in this District, and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '599 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '599 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by SK hynix to be especially made or adapted for use in the infringement of the '599 Patent. SK hynix performs these affirmative acts with knowledge of the '599 Patent and with intent, or willful blindness, that it causes the direct infringement of the '599 Patent.

145.    MonolithIC 3D has suffered damages as a result of Defendant's direct and indirect infringement of the '599 Patent in an amount to be proved at trial.

146.    SK hynix has willfully infringed, and continues to willfully infringe, the '599 Patent by intentionally and deliberately carrying out acts of direct and indirect infringement, while

knowing, or taking deliberate steps to avoid learning, that those acts infringe. For example, Upon information and belief, SK hynix has known of MonolithIC 3D's patents, including the '599 Patent.

147.    MonolithIC 3D has suffered damages as a result of Defendant's direct and indirect infringement and willful infringement of the '599 Patent in an amount to be proved at trial.

148.    MonolithIC 3D has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '599 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

**COUNT VII**
**(Infringement of the '038 Patent)**

149.    Paragraphs 1 through 40 are incorporated by reference as if fully set forth herein.

150.    MonolithIC 3D has not licensed or otherwise authorized SK hynix to make, use, offer for sale, sell, or import any products that embody the inventions of the '038 Patent.

151.    SK hynix has and continues to directly infringe the '038 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '038 Patent. These products include at least the Accused Products, such as the SK hynix Platinum P51 SSD.











3D NAND Die Photograph
(after removal from chip encapsulation)

152.    For example, Defendant has and continues to directly infringe at least claim 1 of the '038 Patent by making, using, offering to sell, selling, and/or importing into the United States products that comprise a 3D semiconductor device, the device comprising: a first level comprising a first single crystal layer, said first level comprising a plurality of first transistors and at least one first metal layer, wherein said at least one first metal layer overlays said first single crystal layer, and wherein said at least one first metal layer comprises interconnects between said first transistors forming first control circuits; a second metal layer overlaying said at least one first metal layer; a second level overlaying said second metal layer, said second level comprising a plurality of second transistors; a third level overlaying said second level, said third level comprising a plurality of third transistors, wherein said second level comprises a plurality of first memory cells, said first memory cells each comprising at least one of said second transistors, wherein said third level comprises a plurality of second memory cells, said second memory cells each comprising at least one of said third transistors, wherein at least one of said second memory cells is at least partially atop of said control circuits, wherein said first control circuits are connected to control data written to at least one of said second memory cells; a third metal layer disposed above said third level; and a fourth metal layer disposed above said third metal layer; wherein at least one of said third transistors comprises a polysilicon channel, and wherein said fourth metal layer has a typical thickness which is at least twice a typical thickness of said second metal layer.

153.    Each Accused Product comprises a 3D semiconductor device, the device comprising: a first level comprising a first single crystal layer, said first level comprising a plurality of first transistors and at least one first metal layer, wherein said at least one first metal layer overlays said first single crystal layer, and wherein said at least one first metal layer comprises interconnects between said first transistors forming first control circuits. For example, the CMOS

under array circuits provide control such as memory access and voltage level setting (*e.g.* program or read voltage). For example, the CMOS under array is built on a single crystal silicon substrate. For example, the below cross section demonstrates these elements in the P51 SSD.



154.    Each Accused Product comprises a second metal layer overlaying said at least one first metal layer; a second level overlaying said second metal layer, said second level comprising a plurality of second transistors. For example, the below cross sections demonstrate these elements in the P51 SSD.



155.    Each Accused Product comprises a third level overlaying said second level, said third level comprising a plurality of third transistors. For example, the below cross sections demonstrate these elements in the P51 SSD.



at least one third level

said second level

3D NAND Deck 2

3D NAND Deck 1



a plurality of third transistors

said third level

156.    Each Accused Product comprises a system wherein said second level comprises a plurality of first memory cells, said first memory cells each comprising at least one of said second transistors. For example, each flash memory cell is a charge trap flash transistor.



157.    Each Accused Product comprises a system wherein said third level comprises a plurality of second memory cells, said second memory cells each comprising at least one of said third transistors. For example, as discussed above, each flash memory cell is a charge trap flash transistor.

158.    Each Accused Product comprises a system wherein at least one of said second memory cells is at least partially atop of said control circuits, and wherein said first control circuits are connected to control data written to at least one of said second memory cells.  For example, the below cross sections demonstrate these elements in the P51 SSD. The control circuits access each of the memory cells, including the second memory cells.



159. Each Accused Product comprises a third metal layer disposed above said third level; and a fourth metal layer disposed above said third metal layer. For example, the below cross sections demonstrate these elements in the P51 SSD.



160.    Each Accused Product comprises a system wherein at least one of said third transistors comprises a polysilicon channel. For example, the below cross sections demonstrate these elements in the P51 SSD.



161.    Each Accused Product comprises a system wherein said fourth metal layer has a typical thickness which is at least twice a typical thickness of said second metal layer. For example, the below cross sections demonstrate these elements in the P51 SSD.



162.    SK hynix indirectly infringes one or more claims of the '038 Patent by knowingly and intentionally inducing others, including SK hynix customers and end-users of the Accused Products and products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States products that include infringing technology, such as Platinum P51 SSDs.

163.    SK hynix indirectly infringes one or more claims of the '038 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as SK hynix's customers and end-users, in this District and elsewhere in the United States. For example, SK hynix's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '038 Patent. SK hynix induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including

technical support, marketing, product manuals, advertisements, and online documentation. Because of SK hynix's inducement, SK hynix's customers and end-users use the Accused Products in a way SK hynix intends and directly infringe the '038 Patent. SK hynix performs these affirmative acts with knowledge of the '038 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '038 Patent.

164.    SK hynix indirectly infringes one or more claims of the '038 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. SK hynix's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '038 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '038 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by SK hynix to be especially made or adapted for use in the infringement of the '038 Patent. SK hynix performs these affirmative acts with knowledge of the '038 Patent and with intent, or willful blindness, that it causes the direct infringement of the '038 Patent.

165.    MonolithIC 3D has suffered damages as a result of Defendant's direct and indirect infringement of the '038 Patent in an amount to be proved at trial.

166.    SK hynix has willfully infringed, and continues to willfully infringe, the '038 Patent by intentionally and deliberately carrying out acts of direct and indirect infringement, while knowing, or taking deliberate steps to avoid learning, that those acts infringe. For example, Upon information and belief, SK hynix has known of MonolithIC 3D's patents, including the '038 Patent.

167.    MonolithIC 3D has suffered damages as a result of Defendant's direct and indirect infringement and willful infringement of the '038 Patent in an amount to be proved at trial.

168.    MonolithIC 3D has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '038 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## COUNT VIII

### (Infringement of the '222 Patent)

169.    Paragraphs 1 through 40 are incorporated by reference as if fully set forth herein.

170.    MonolithIC 3D has not licensed or otherwise authorized SK hynix to make, use, offer for sale, sell, or import any products that embody the inventions of the '222 Patent.

171.    SK hynix has and continues to directly infringe the '222 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States, products that satisfy each and every limitation of one or more claims of the '222 Patent. These products include at least the Accused Products, such as the SK hynix Platinum P51 SSD.











3D NAND Die Photograph
(after removal from chip encapsulation)

172.    For example, Defendant has and continues to directly infringe at least claim 8 of the '222 Patent by making, using, offering to sell, selling, and/or importing into the United States, products that comprise A semiconductor device, the device comprising: a first silicon layer comprising a first single crystal silicon layer; a first metal layer disposed over said first single crystal silicon layer; a second metal layer disposed over said first metal layer; a third metal layer disposed over said second metal layer; a second level comprising a plurality of transistors, said second level disposed over said third metal layer; a fourth metal layer disposed over said second level; a fifth metal layer disposed over said fourth metal layer; and a via disposed through said second level, wherein said via has a diameter of less than 450 nm, and wherein a typical thickness of said fifth metal layer is greater than a typical thickness of said fourth metal layer by at least 50%.

173.    Each Accused Product comprises a semiconductor device, the device comprising: a first silicon layer comprising a first single crystal silicon layer; a first metal layer disposed over said first single crystal silicon layer; a second metal layer disposed over said first metal layer; a third metal layer disposed over said second metal layer; and a second level comprising a plurality of transistors, said second level disposed over said third metal layer. For example, the below cross sections demonstrate these elements in the P51 SSD. For example, the CMOS under array peripheral circuits are built on a single crystal silicon substrate.



174.    Each Accused Product comprises a fourth metal layer disposed over said second level; a fifth metal layer disposed over said fourth metal layer; and a via disposed through said second level. For example, the below cross sections demonstrate these elements in the P51 SSD.



175.    Each Accused Product comprises a system wherein said via has a diameter of less than 450 nm. For example, the below cross sections demonstrate these elements in the P51 SSD.



176.    Each Accused Product comprises wherein a typical thickness of said fifth metal layer is greater than a typical thickness of said fourth metal layer by at least 50%. For example, the below cross sections demonstrate these elements in the P51 SSD.



177.    SK hynix indirectly infringes one or more claims of the '222 Patent by knowingly and intentionally inducing others, including SK hynix customers and end-users of the Accused Products and products that include the Accused Products, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling, and/or importing into the United States, products that include infringing technology, such as Platinum P51 SSDs.

178.    SK hynix indirectly infringes one or more claims of the '222 Patent, as provided by 35 U.S.C. § 271(b), by inducing infringement by others, such as SK hynix's customers and end-users, in this District and elsewhere in the United States. For example, SK hynix's customers and end-users directly infringe, either literally or under the doctrine of equivalents, through their use of the inventions claimed in the '222 Patent. SK hynix induces this direct infringement through its affirmative acts of manufacturing, selling, distributing, and/or otherwise making available the

Accused Products, and providing instructions, documentation, and other information to customers and end-users suggesting that they use the Accused Products in an infringing manner, including technical support, marketing, product manuals, advertisements, and online documentation. Because of SK hynix's inducement, SK hynix's customers and end-users use the Accused Products in a way SK hynix intends and directly infringe the '222 Patent. SK hynix performs these affirmative acts with knowledge of the '222 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '222 Patent.

179.    SK hynix indirectly infringes one or more claims of the '222 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. SK hynix's affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others' use and manufacture of the Accused Products, such that the '222 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the '222 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by SK hynix to be especially made or adapted for use in the infringement of the '222 Patent. SK hynix performs these affirmative acts with knowledge of the '222 Patent and with intent, or willful blindness, that it causes the direct infringement of the '222 Patent.

180.    MonolithIC 3D has suffered damages as a result of Defendant's direct and indirect infringement of the '222 Patent in an amount to be proved at trial.

181.    SK hynix has willfully infringed, and continues to willfully infringe, the '222 Patent by intentionally and deliberately carrying out acts of direct and indirect infringement, while knowing, or taking deliberate steps to avoid learning, that those acts infringe. For example, Upon

information and belief, SK hynix has known of MonolithIC 3D's patents, including the '222 Patent.

182.    MonolithIC 3D has suffered damages as a result of Defendant's direct and indirect infringement and willful infringement of the '222 Patent in an amount to be proved at trial.

183.    MonolithIC 3D has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '222 Patent, for which there is no adequate remedy at law, unless Defendant's infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, MonolithIC 3D prays for relief against Defendant as follows:

a.    Entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of the Patent-in-Suit;

b.    Entry of judgment declaring that SK hynix's infringement of the Patent-in-Suit is willful;

c.    Entry of a preliminary injunction enjoining SK hynix from making, using, importing, offering to sell, and/or selling the Accused Products;

d.    Entry of a permanent injunction enjoining SK hynix from making, using, importing, offering to sell, and/or selling the Accused Products;

e.    An order awarding damages sufficient to compensate MonolithIC 3D for Defendant's infringement of the Patent-in-Suit, but in no event less than a reasonable royalty, including supplemental damages post-verdict, together with pre-judgment and post-judgment interest and costs;

f.      Entry of judgment declaring that this case is exceptional and awarding MonolithIC 3D its costs and reasonable attorneys' fees under 35 U.S.C. § 285;

g.      An accounting for acts of infringement;

h.      Such other equitable relief which may be requested and to which the Plaintiff is entitled; and

i.      Such other and further relief as the Court deems just and proper.

Dated: November 26, 2025

Respectfully submitted,

_/s/ Peter Lambrianakos_
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@fabricantllp.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

**ATTORNEYS FOR PLAINTIFF
MONOLITHIC 3DTM INC**